UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                    Case Nos.:    3:14cr57/MCR/CJK
                                                    3:17cv748/MCR/CJK

THOMAS VICTOR SWAY
_____/

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." (ECF No. 87.)    The Government filed a response (ECF No. 89), following which the court held an evidentiary hearing on two of Defendant's claims. The transcript of the hearing has been filed, and the parties have fully briefed the matter. (ECF Nos. 106, 107, 114, 118). Defendant has also filed a "Memorandum Rebuting (sic) the Government's Response. . ."    (ECF No. 120).    After a review of the record and consideration of the evidence and arguments presented at the evidentiary hearing, the undersigned recommends the § 2255 motion be denied.

## PROCEDURAL BACKGROUND

On July 16, 2014, a grand jury charged Thomas Victor Sway with knowingly receiving or attempting to receive images and video containing child pornography

in violation of 19 U.S.C. § 2252A(a)(2) and (b)(1) ("Count One") and possession of child pornography involving a prepubescent minor and a minor who had not attained twelve (12) years of age in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2) ("Count Two").   (ECF No 3.)   Defendant was represented by Assistant Federal Public Defender Thomas Keith.

After a three-day trial, a jury found Mr. Sway guilty and specifically found the offense conduct involved children under twelve years old.   (ECF No. 52.)   The offense conduct came to light through law enforcement's downloading of video files containing child pornography in February 2013.   Law enforcement used a peer-to-peer file-sharing program.   Investigation revealed the files originated from Sway's Pensacola address.   On May 15, 2013, upon execution of a search warrant at Mr. Sway's residence, two agents conducted an interview.   During this interview, Mr. Sway admitted he purchased a computer from a pawn shop and later used it to download child pornography.   He also identified images he had previously viewed and search terms used to find the images.   (ECF No. 60, PSR ¶¶ 9-12.)

The Final Presentence Investigation Report ("PSR") reflects that Mr. Sway's base offense level, before the Chapter Two adjustments, was 22.   (ECF No. 60, PSR ¶ 24.)   The offense conduct supported adjustments for material involving

children under twelve (two levels), material portraying sadistic or masochistic conduct (four levels), use of a computer (two levels), and the quantity of images (five levels). (PSR ¶¶ 25-28.) After a two-level adjustment for obstruction due to Mr. Sway absconding from pretrial supervision, his total offense level was 37. (PSR ¶¶ 19-20, 31-35.) With no prior criminal record, Mr. Sway's criminal history category was I. (PSR ¶¶ 36-38.) The resulting advisory guidelines range of 210 to 262 months came in above the twenty (20) year statutory maximum term of imprisonment on each count. (PSR ¶¶ 60-61.) The court sentenced Mr. Sway well below this range to a term of 96 months' imprisonment. (*See* ECF No. 76 at 27-32.)

Mr. Sway appealed, contending the district court plainly erred by permitting an investigating officer to testify for the Government as both a fact and expert witness without properly distinguishing the two roles for the jury. (ECF No. 82.) The Eleventh Circuit found that although the district court "might have" given the jury an instruction about the distinction between the dual roles, no binding precedent required such an instruction.

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

In the present motion, Mr. Sway raises multiple grounds of ineffective assistance of counsel.    In its response in opposition, the Government conceded an evidentiary hearing was needed on two of Mr. Sway's claims.

## ANALYSIS

### General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."    *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.    A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).    The "fundamental miscarriage of justice" exception recognized in

*Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides it must be shown the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a § 2255 motion which have been resolved on direct appeal.    *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).    Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under § 2255.    *Nyhuis*, 211 F.3d at 1343 (quotation omitted).    Broad discretion is afforded a court's determination of whether a particular claim has been previously raised.    *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under § 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal generally are not actionable in a § 2255 motion and will be considered procedurally barred.    *Lynn*, 365 F.3d at

1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (*quoting Mills*, 36 F.3d at 1055).   Absent a showing the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error -- that is, alternatively, that he is "actually innocent."   *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).   To show cause for procedural default, a defendant must show "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   *Lynn*, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To

prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   *Strickland*, 466 U.S. at 697; *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."   *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."   *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (*quoting Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of

counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted). "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of experienced trial counsel, the presumption counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (*quoting Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542

(11th Cir. 1993)).    Furthermore, an attorney is not constitutionally deficient for failing to preserve or argue a meritless claim.    *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (*citing Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."    *Chandler*, 218 F.3d at 1313.    This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.    *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).    The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."    *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Regardless of how the standard is framed, under the prevailing case law it is abundantly clear a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.    A defendant's belief that a certain course of action counsel failed to take might have helped his case does not direct a finding counsel was *constitutionally ineffective* under the standards set forth above.

Ground One

Mr. Sway first contends trial counsel rendered ineffective assistance because he failed to object to the "dual role" testimony at trial provided by two Government witnesses.    Sway asserts Detective Wilkinson and Special Agent Bosso provided both fact and expert testimony about highly technical details concerning forensic findings without safeguards to distinguish the two roles for the jury.    The court designated Detective Wilkinson as an expert in forensic analysis (ECF No. 72 at 62-63), but Bosso was neither so offered nor so designated.    Sway contends the Government failed to bifurcate Wilkinson's dual role testimony, and "Wilkinson's testimony repeatedly blurred the lines between expert testimony about forensic analysis and fact testimony about his investigation of the case, at times appearing to use his expert status to confirm conclusions he made as the investigating officer

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

without proper foundation."    (ECF No. 87 at 19.)    Sway concedes the court gave

the standard instruction regarding expert witnesses to the jury, but because counsel

did not pose an appropriate objection, he maintains the court "made no effort to warn

the jury about distinguishing between Wilkinson's fact testimony and his expert

testimony."    (ECF No. 87 at 20.)    This alleged error also affected his appeal, Sway

states, because absent objection from counsel, appellate review of this issue was only

for plain error.[1]

Sway argues Bosso also blurred the line between fact and expert testimony at

trial.    Counsel, he contends, should have objected to the testimony and requested

specifically that Agent Bosso be properly qualified as an expert and the court give

the jury a cautionary instruction, or that Bosso's highly technical testimony be

disallowed.    (ECF No. 87 at 20; ECF No. 103 at 3.)

In his closing memorandum, Sway argues both investigators provided

"forensic conclusions" to the investigation without proper forensic foundation.

This was particularly prejudicial, he says, because of the lack of a forensic expert to

---

[1] The Eleventh Circuit's opinion did not identify the agent to whose testimony Mr. Sway objected.
Mr. Sway states in his § 2255 motion that appellate counsel objected only to the testimony of
Detective Wilkinson although Agent Bosso's testimony was similarly tainted.    (ECF No. 87 at
19, 20.)

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

impeach their testimony, as argued in Ground Four of his motion.    (ECF No. 108-1 at 3).    Sway maintains Wilkinson and Bosso were allowed to "conclude their investigation in an expert capacity that lacked proper forensic foundation. This mislead the jury and caused a deliberation built upon circumstantial evidence as if it were direct evidence."    (ECF No. 108-1 at 8.)    Mr. Sway does not explain what he means by "circumstantial evidence."

The Government takes the position Mr. Sway has not alleged or established the outcome of the proceedings would have been different had counsel objected to the testimony of which Sway now complains and specifically requested a dual-role testimony instruction.    The Government notes the court's instruction regarding expert testimony.    The court instructed the jury as follows:

> When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters. Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion.    The same as with any other witness, it is up to you to decide whether to rely upon it.

(ECF No. 73 at 232-233; ECF No. 51 at 7.)    Neither party objected to the instruction.

The Government asserts Detective Wilkinson's testimony covered five well-defined areas with "no possibility of confusion or overlap between his role as an

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

expert analyst and those duties executed as a lay investigator.    (ECF No. 89 at 6.)

The Government goes on to note the defense at trial never complained about any

risk of confusion to the jury, or that guidance other than the jury instruction set out

above would be needed.

The Government calls attention to the Eleventh Circuit's rejection of Sway's

plain error argument on appeal concerning allowing a witness to give fact and expert

testimony.    Accordingly, suggests the Government, counsel cannot be

constitutionally ineffective for having failed to raise the objection.    (ECF No. 89 at

20.)    This argument is based upon the notion an appellate finding of no plain error

would indicate counsel's performance could not have been below an objective

standard of reasonableness.

Sway's assertions appear to be twofold.    First, had counsel made the

objection, a different, less onerous standard of review would have applied on appeal.

Second, he claims the lack of instruction regarding Bosso's testimony led to jury

confusion and "caused a deliberation built upon circumstantial evidence as if it were

direct evidence." (ECF No. 108-1 at 8).    But the latter assertion ignores what all

lawyers know—proof by circumstantial evidence is just as legitimate as proof by

direct evidence.    *See United States v. Henderson*, 693 F.2d 1028, 1030 (11th Cir.

1982) ("Circumstantial evidence can be and frequently is more than sufficient to establish guilt beyond a reasonable doubt.")

More importantly, regardless of the truth of either of these assertions, Sway has not alleged or established the outcome of the proceedings would have been different had counsel objected and obtained a clarifying instruction regarding the testimony of a dual-role witness.   In other words, not only has Sway failed to specify the confusion allegedly caused by the introduction of circumstantial evidence, but he also provides no counter to the Government's persuasive point that no prejudice has been shown.

Ground Two

Mr. Sway alleges in Ground Two that before trial, he informed his lawyer he was under the influence of marijuana and Adderall (stolen from his girlfriend) during the initial interview with Detective Wilkinson and Special Agent Bosso.   Counsel fell short, Sway contends, because he did not seek to suppress the confession that occurred during that interview on the basis he was under the influence of controlled substances.   Sway notes the district judge stated at sentencing that she did not believe he had been truthful on the witness stand.   He argues the confusion about the interview he displayed during his testimony at trial was proof he had been under

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

the influence of controlled substances at the time of the interview.    (ECF No. 87 at

21.)    He accurately claims the record reflects he was suffering from depression.

His assertion that he "obviously was self-medicating" and "was doing this every

day" is not supported by the citation he provides, which is ECF No. 76 at 31, a

portion of the sentencing transcript setting out the court's reasoning when imposing

sentence.

Mr. Sway, who was in his early 20's at the time of the offense conduct, states

in his affidavit that he had been smoking marijuana since he was a teenager and, for

some time, had been stealing and using Adderall prescribed to his then-girlfriend.

(ECF No. 87 at 26.)    Sway states he smoked marijuana to calm his nerves before

Detective Wilkinson arrived and admitted to Wilkinson he was under the influence

when the detective arrived.    (*Id.* at 27.)    The form the agents asked him to sign at

the time of the interview did not mention anything about being under the influence

of drugs or alcohol.    (*Id.*)    Sway further claims that had he not been under the

influence of drugs at the time, he "would not have consented to any questions of the

interview."    This is, at the least, a curious proposition considering Sway (who

customarily smoked marijuana at work with no effect on the quality of his work),

intentionally got high in order to calm his nerves in preparation for his encounter

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

with the detectives.   (*Id.*)   Finally, Sway maintains his "confession" was not valid; he complains counsel did nothing to exploit this "obvious vulnerability" and, "at the very least [counsel] could have moved to dismiss this evidence before or during trial."   (*Id.* at 28.)

In response, the Government noted Mr. Sway did not mention his claims of impairment during his testimony, to the probation officer during his interview for the preparation of the PSR, or at sentencing, and that Mr. Keith did not reference this during either his opening statement or closing argument.   The Government nonetheless requested the court hold an evidentiary hearing due to the local policy which does not permit Assistant Federal Public Defenders to furnish affidavits in response to ineffective assistance of counsel claims by former clients.

At the August 1, 2018, evidentiary hearing, Detective Wilkinson recounted his over 30 years of law enforcement experience, as well as his training on "how to detect intoxication by many different substances."   (ECF No. 106 at 36.) [2] Detective Wilkinson had also worked for three years as a "nationally registered

---

[2] There are two versions of the transcript in the file. (ECF No. 106, 107.)  They are identical except Document 106 omits the transcription of the *ex parte* hearing that took place outside the presence of the Government regarding Mr. Sway's motion to release counsel, while Document 107 includes the entire evidentiary hearing.  To alleviate the potential for confusion, page references herein are to the transcript pages, rather than the page assigned by the electronic docketing system.

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

emergency medical technician," during which time he had the opportunity to observe many individuals who were under the influence of alcohol or controlled substances. (*Id*. at 36-37.)    Counsel asked if Wilkinson observed anything about the defendant leading him to believe the defendant was under the influence of any controlled substance during the May 15, 2013, interview.    (*Id*. at 40, 41-42.)    Detective Wilkinson responded in the negative; he also stated that, contrary to Mr. Sway's claim, Mr. Sway never said anything about being high on marijuana or under the influence of Adderall.    (*Id.* at 40-41.)    According to Wilkinson, no odor of marijuana was evident on Mr. Sway's person.    (*Id*.)

Special Agent Lindsay Bosso had 15 years of law enforcement experience, including training on how to detect the odor of marijuana.    (ECF No. 106 at 69, 72.)    As was the case with Detective Wilkinson, Special Agent Bosso made neither olfactory nor visual observations of Mr. Sway during the interview to suggest Mr. Sway was under the influence of any controlled substance.    (*Id.* at 72.)

Assistant Federal Public Defender Thomas Keith testified his notes pertaining to discussions with his client about Mr. Sway's interaction with law enforcement did not include any reference to Sway being high on marijuana or Adderall.    (ECF No. 106 at 101.)    Counsel stated "I'm not saying he didn't mention at all, maybe he had

smoked marijuana.    I can't recall that.    That wasn't something that was a big issue in my mind, you know, as I recall the discussions with him about that interview." (*Id.* at 102.)    Mr. Keith noted nothing in either his discussions with the client or in reading the interview report led him to believe there was any meritorious basis to file a motion to suppress.    (*Id.* at 102-103.)    Counsel also testified had he known Mr. Sway was high at the time of the interview, this is "probably" something he would have solicited from Sway in front of the jury.    (*Id*. at 107.)

Mr. Sway testified at the evidentiary hearing he was under the influence of Adderall and marijuana during his interview with law enforcement. (ECF No. 106 at 127.)    According to Mr. Sway, he took two to three Adderall pills daily, which helped him function at his job as a mechanic.    (*Id.*)    He said he smoked marijuana just before the interview with Detective Wilkinson and Special Agent Bosso.    Mr. Sway said he kept some "weed" in his toolbox so if he "needed it" he could "smoke and calm down," as he now says he did on the date in question.    (*Id.* at 128.) However, he also claimed he was so "out of it" he did not understand what law enforcement officials were saying.    (*Id*. at 130.)    Mr. Sway claimed he twice told his attorney he was impaired or intoxicated when he talked to the agents but counsel indicated it did not matter because he made the statement voluntarily and it would

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

be better for the jury not to hear evidence regarding marijuana use.    (*Id.* at 129-130.)    Then, on cross-examination Mr. Sway damaged his own claim of impairment when he admitted he could function as a mechanic even while under the influence of marijuana and reiterated Adderall made him more productive at work. (*Id.* at 149, 151.)    He did not explain why these particular drugs had a negative effect only when he spoke to law enforcement about child pornography.    Such a conclusion certainly is not self-evident.

Neither of the two seasoned law enforcement officers observed anything that suggested Sway had used drugs or was impaired.    Furthermore, Mr. Sway's present claim of impairment was not mentioned during his testimony at trial, to the probation officer who prepared the PSR, or at sentencing.    There is no evidence, other than Mr. Sway's after-the-fact assertions, to which the undersigned can assign scant credibility, that he was impaired at the time of the interview.    Sway's attempt to reargue the proper interpretation of the evidence and to identify alleged "conflicts" in the agents' testimony at the evidentiary hearing versus their testimony at trial provides no support for his claim.    (*See* ECF No. 120 at 16-19.)    No contemporary basis existed to seek suppression of the confession.    Counsel cannot be faulted.

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

Ground Three

Mr. Sway also argues Mr. Keith was constitutionally ineffective because he did not move to dismiss Count Two of the indictment prior to trial.   Count One charged Mr. Sway with receiving or attempting to receive child pornography between November 12, 2012, and "on or about May 15, 2013."   (ECF No. 3.) Count Two charged possession of child pornography on or about May 15, 2013. (*Id.*)   Count Two was a lesser included offense of Count One.   Because counsel did not move to dismiss Count Two before trial, Sway maintains, the Government was able to introduce "highly prejudicial" evidence relevant to Count Two, which the Government ultimately dismissed at sentencing.   The evidence was comprised of pictures and videos Sway contends were "simply meant to inflame the emotions of the jury."   (ECF No. 87 at 23.)   Sway states "[e]ven if counsel's request would have been denied, the possibility should still have been explore (sic) and was not." (*Id.*)

The Government readily notes a Double Jeopardy violation would have resulted had Sway been sentenced on both Counts One and Two.   (ECF No. 89, *citing Rutledge v. United States*, 517 U.S. 292, 297 (1996); *United States v. Bobb*, 577 F.3d 1366, 1371-72 (11th Cir. 2009).)   The Government also argues Sway has

shown no evidentiary prejudice because Count Two, the possession charge, is a lesser included offense of Count One and all evidence necessary to prove Count Two was necessary and admissible to prove Count One.   Hence, as the Government observes, even if counsel had somehow successfully moved to dismiss Count Two, no reason appears to suggest that excision of that count, a lesser charge, could have made any difference.   Sway theorizes that if Count Two had been dismissed, "stipulations the defendant agreed to would have been available to prevent the presentation of Child Pornography to the public."   (ECF No. 120 at 26.)   But, the specter of such "stipulations" does not mean that the government would have somehow been barred from presenting the same germane evidence.   Sway has shown neither deficient performance nor prejudice.[3]

Ground Four

In the final ground raised in the petition, Sway contends his lawyer was ineffective for failing to obtain an independent expert forensic witness to impeach the testimony of the Government's experts.   Sway theorizes the offending files and images were somehow put on the computer by someone else.   Sway notes both

---

[3] The court notes Sway's attempt to argue that the privacy rights of the child victims was violated by the presentation of this evidence to the jury.   (ECF No. 120 at 23, 26-27.)   Sway does not have standing to assert such a claim, and, given the evidence, it is borderline ridiculous.

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

Detective Wilkinson and Agent Bosso repeatedly referenced their training and experience during trial.   Wilkinson, who said he had thousands of hours of experience performing forensic analysis, also testified he had never experienced a crashed hard drive that was in the process of restoring.   (ECF No. 73 at 112.) Wilkinson testified at trial that the relevant files were in unallocated space on the computer. He explained the files had been deleted, but in this situation, "the card catalog files were all still intact," so he was able to recover them. (*Id.* at 112-113.) Wilkinson testified if the files had been truly deleted, he would not have been able to recover dates, times, or other pertinent information.   (*Id.* at 113.)

Wilkinson said a "restore" was in process, meaning the computer user was trying to recover the files so they could be "reused and relocated and looked at again."   (*Id.*)   Wilkinson explained "although the files were in unallocated space, at the time that the computer froze and they were in that place, the computer basically – the hard drive was like it was frozen in time in the middle of that process, it never finished it."   (*Id.*)   He concluded by saying this information was consistent with what he learned from Sway during the interview.   (*Id.*)

Sway faults what he believes was defense counsel's lack of technical competence and failure to present a forensic expert.   Sway states his father

contacted a computer forensic expert and obtained a detailed written forensic analysis, but counsel chose not to use this expert.    He maintains "absent a defense forensic expert, the Government was free to roam at will into technical areas where the Court, defense counsel, the jury and particularly Mr. Sway were clueless."    This resulted in prejudice to Sway because if counsel had presented a forensic expert, "there is a high probability that the outcome of the proceedings would have been different."    (ECF No. 87 at 25.)

Sway further maintains a defense forensic expert could have impeached Wilkinson's conclusions about the crashed hard drive.    What lacks, however, is any explanation of what testimony could have been presented by the hypothetical forensic expert and how such testimony would have been helpful to the defense case.

The Government brought out that defense counsel indeed consulted with a computer forensics expert.    This was Daniel R. Meinke, from Sioux Falls, South Dakota.    The consult is documented in three defense motions to continue the trial, as well as defense counsel's testimony at the evidentiary hearing.    (*See* ECF Nos. 25, 29, 36, 107.)    The Government notes Meinke was not called at trial. Nevertheless, according to the Government, at trial, Mr. Keith "appeared to be cross-examining Detective Wilkinson from a document he brandished about before the

jury, which may have contained suggestions from a defense expert regarding cross examination questions for Wilkinson."   (ECF No. 89 at 25.)

Mr. Keith explained at the hearing that he in fact contacted two forensic experts before trial.   Mr. Meinke analyzed the computer and provided counsel a report of his examination, which counsel shared with the client's father. (ECF No. 106 at 88, 89.)   Mr. Keith recalled Mr. Meinke found child pornography on the computer hard drive in the folder named "Sway," as well as the key search terms reported by the Government.   In sum, Mr. Meinke's examination confirmed what the Government examiner found.   (*Id* at 90.)   Sway's father had some questions, which counsel relayed to the expert, but the responses were not exculpatory.   (*Id.* at 90-91.)   Counsel did not call Meinke as a witness at trial because he did not see how Meinke could be helpful to the defense.   (*Id.* at 93.)   Mr. Keith confirmed Mr. Meinke was paid for his services.   (*Id*. at 92.)

The second forensic expert was Tami Loehrs, whom counsel learned about from Defendant's father, Maury Sway.   (ECF No. 106 at 94.)   Ms. Loehrs reviewed the forensic reports from the Government witnesses and from Mr. Meinke, although she did not look at the actual hard drive.   (*Id.* at 95.)   Ms. Loehrs could find nothing that would exonerate Sway.   In preparation for trial, counsel spoke to

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

Ms. Loehrs for guidance as to what to ask the Government witnesses about their forensic analysis.   He recalled using some information brought to his attention by Loehrs in cross-examining Detective Wilkinson at trial.   (*Id*. at 96-97.)   Ms. Loehrs was also paid by the office of the Federal Public Defender.[4]   (*Id*. at 98.)

In sum, counsel consulted with not one, but two, retained forensic experts, neither of whom found any helpful evidence.   Sway's claim that he "lacked any favorable forensic facts to contest the evidence that the Government presented against him" is not the fault of counsel.   (*See* ECF No. 120 at 30.)   The court is not persuaded by the thinly veiled (and unsupported) suggestion that counsel should have hired a third forensic expert to try to find exculpatory evidence where the first two had not.   The *Strickland* standard does not require counsel to expend limitless resources.   Nor is counsel to be blamed for the alleged surfacing of "favorable forensic facts" after trial.   (ECF No. 120 at 31.)   Mr. Sway's most recent complaint, never raised before his reply, that "no professional psycologist (sic) or mental health counselor was proffered to inform the jury of the specifics of the aforementioned 'profile,'" (ECF No. 120 at 30) that is, that Sway did not fit the "profile" of a child pornography collector offers nothing to his case.   Moreover,

---

[4] Sway claims in his reply, without support, that this is not true.   (ECF No. 120 at 40.)

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

such evidence would likely have been inadmissible.    See *United States v. Gartenlaub*, Case No. 8:14-cr-00173-CAS, 2015 WL 7574743, at \*1 (C.D. Cal. Nov. 23, 2015) (excluding proposed evidence from defendant's psychologist who intended "to testify that defendant's character traits make it unlikely that he downloaded and viewed the child pornography found on his computer").

Finally, re-argument of the weight of the evidence presented at trial is not appropriate at this juncture of the case.    Counsel was not constitutionally ineffective.

## Conclusion

For all the foregoing reasons, Mr. Sway has not shown any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.    Therefore, his motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED that:

1.    The amended motion to vacate, set aside, or correct sentence (ECF No. 87) be DENIED.

2.    A certificate of appealability be DENIED.

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK

At Pensacola, Florida, this 15th day of November, 2018.


_/s/_ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

      Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case Nos.: 3:14cr57/MCR/CJK; 3:17cv748/MCR/CJK